LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| JOSE POOT,  KISHAWN NORBERT, KENYON NORBERT, MARSHALL HIGGINBOTHAM, ANTOINE DEWHITT, CORY BUTLER, MONTRAIL BRACKENS, DELON BARKER, and JAVONN ALLEN, on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL and John & Jane DOEs, Nos. 1 - 50.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES CLASS ACTION**<br><br>(1) **Cruel and Unusual Denial of Sleep:** Violations of 8th and 14th amendments of U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution, 15 CCR 1065.<br><br>(2) **Cruel and Unusual Disruption of Sleep**<br><br> Violations of 8th and 14th amendments of U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution and 15 CCR 1065.<br><br>**JURY TRIAL DEMANDED** |

# INTRODUCTION

1. This is a civil rights class action in which the Plaintiffs, on behalf of themselves and a class of similarly situated individuals, seek relief from Defendants' violations of Plaintiffs' rights and privileges secured primarily by the Fifth, Fourteenth, and Eighth Amendments of the United States Constitution.

2. At issue are conditions in two San Francisco County Jails: County Jail #4 ("CJ4") in San Francisco, and County Jail #5 ("CJ5") in San Bruno (hereinafter referred to collectively as "the Jails").

3. In the Jails, the schedule calls for lights out at 10:30 p.m. Breakfast is served at 3:30 a.m. The schedule at the Jails, designed by Defendants, for their benefit, ease and convenience, disregards the basic human needs of prisoners for sleep. The schedule prevents any prisoner from being able to have nighttime sleep durations of more than five hours a night, and for most prisoners, they receive less than five hours a night because of actions by sheriff deputies, and the ever-present lights at CJ5.

4. In addition, although the schedule theoretically permits a sleep duration of up to five hours at night, on a regular basis, and with great frequency, sheriff's deputies routinely disrupt prisoners' limited sleep duration, often hourly, through their activities and conduct, including repeatedly shining bright lights into prisoners' eyes, waking prisoners up to force them to move, or show their ID bracelets, talking to prisoners, making announcements over the public address system, and having prisoner activities including medical appointments and medication distribution. Prisoners with medical needs, including diabetics. are woken daily at 2:30 a.m. for the jail to monitor the prisoner's blood sugar.

5. As a result of the schedule and constant disruptions, prisoners at the Jails suffer from chronic deprivation of sleep and disturbance of sleep. This ongoing, nightly sleep deprivation and disturbance has created a cascading negative effect on prisoners' abilities to function at the cognitive, physical, and psychiatric levels. Cognitive impairment adversely impacts pretrial prisoners' ability to assist in their legal defense. Sleep deprivation causes more sensitivity to physical pain, and prisoners' overall health and immune systems are negatively impacted, resulting

in health issues including bacterial and viral infections.  Psychiatrically, prisoners find themselves short tempered and irritable; experience difficulty exercising emotional control; are unable to handle frustration, and often lack the necessary behavior controls demanded by the jail system.  As a result, prisoners suffer disciplinary and punitive consequences with ensuing additional deprivations including loss of telephone and visiting privileges, loss of the ability to purchase commissary, and placement into solitary confinement or administrative segregation.  The added social and sensory isolation of solitary confinement and administrative segregation compounds the cognitive, functional and psychiatric impairments already existing due to sleep disruption and deprivation.

6.     This civil rights class action lawsuit seeks to end these long-standing unconstitutional practices at the Jails.   Plaintiffs, who have been subject to and harmed by Defendants' constitutionally prohibited practice of regularly depriving prisoners of sleep and disturbing prisoners' sleep, seek to represent class prisoners housed at County Jail 4 and County Jail 5; all of whom are subject to these practices; and the subclass of prisoners in County Jail 4 and 5 who have medical conditions such as diabetes who are required to 2:30 in the morning to receive alleged medical care.   Plaintiffs seek a declaration that Defendants' ongoing policies and practices violate their constitutional and statutory rights, and further, such injunctive relief, compelling Defendants to (1) cease the harmful, excessive and unconstitutional use of sleep deprivation and sleep disruption; (2) an order compelling Defendants to implement procedures to permit prisoners at least 6.5 hours of night time sleep during court day and 7.5 hours of night time sleep on weekends and non-court days; and (3) an order compelling Defendants to cease activities during nighttime sleep hours which disrupt and wake up prisoners and prevent them from obtaining necessary and needed sleep.

## JURISDICTION

7.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).  This Court may grant declaratory relief under 28 U.S.C. § 2201.

8.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of

state authority, of rights privileges, and immunities secured by the United States Constitution), and, by pendent jurisdiction, California Constitution, Article 1, Section 7, and the aforementioned statutory and constitutional provisions.

9.    Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

10.    Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202, 29 U.S.C. § 794a, 42 U.S.C.  §§ 1983 and 12117(a), California Government Code § 11135, and Article I, Sections 7 and 17 of the California Constitution.

11.    Plaintiffs and members of the class filed numerous grievances and exhausted the administrative remedies with the San Francisco Sheriff's Office.  The San Francisco Sheriff's Office accepted some grievances and denied the grievances they permitted to be filed, or refused to accept grievances.  Defendants have taken no action to correct these  problems.

12.    Plaintiffs individually and as a group filed a government claim with the CITY AND COUNTY OF SAN FRANCISCO regarding their claims and the claims.  This claim was filed on March 6, 2019 and rejected on March 19, 2018.

**VENUE AND INTRADISTRICT ASSIGNMENT**

13.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. The claims alleged herein arose in the Counties of San Francisco and San Mateo, in the State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lie in the United States District Court for the Northern District of California, San Francisco Division or San Jose Division.

14.    This Court has personal jurisdiction over each and every Defendant because, upon information and belief, all Defendants were residents of California, were employed in California, or otherwise conducted business in California, and all were acting under color of law during all relevant times.

**JURY DEMAND**

15.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Federal Rule of Civil Procedure 38(b).

**PLAINTIFFS**

16.     Plaintiffs JOSE POOT,  KENYON NORBERT, and  MONTRAIL BRACKENS, are currently pretrial detainees housed at the County Jail #4 located at 850 Bryant Street in the City of San Francisco, and under the custody and control of the San Francisco County Sheriff's Department.

17.     Plaintiffs KISHAWN NORBERT, MARSHALL HIGGINBOTHAM, ANTOINE DEWHITT, CORY BUTLER, DELON BARKER, and JAVONN ALLEN are pretrial detainees housed at the County Jail #5 in San Bruno, California, in San Mateo County, and under the authority of the San Francisco County Sheriff's Office.

18.     All Plaintiffs have been and remain residents of California.

**DEFENDANTS**

19.     Defendant SAN FRANCISCO COUNTY is a county in the State of California.

20.     Defendant SAN FRANCISCO SHERIFF'S DEPARTMENT (HEREINAFTER "SHERIFF") is a law enforcement agency within CITY AND COUNTY OF SAN FRANCISCO and, relevant here, is charged with operating the Jails. The Sheriff has failed and refused to adopt appropriate and necessary policies and procedures regarding the treatment and care of the PLAINTIFFS and class members.

21.     Defendant VICKI L. HENNESSY is, and at all times relevant to this Complaint was, the elected Sheriff of San Francisco County. As Sheriff of San Francisco County, Defendant HENNESSY holds the command and policy making position with regard to County Jails, including County Jails #4 and #5.  Defendant HENNESSY has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the unconstitutional and inhumane conditions, actions, policies, customs and practices that prevail at the Jails, as described fully below. There is a direct causal link between the affirmative acts and omissions of Defendant Sheriff HENNESSEY, as the chief supervisory member of the San Francisco Sheriff's Department and the injuries and

violations of rights set forth fully below. Defendant HENNESSY has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which PLAINTIFFS seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below. Defendant HENNESSEY, as the chief supervisory and decision-making member of the San Francisco Sheriff's Department is sued in her individual capacity.

22. Defendant PAUL MIYAMOTO is, and at all times relevant to this Complaint was, the Chief Deputy Sheriff of San Francisco County in charge of the Custody Division ("CD"), which includes the Jails. As Chief Deputy Sheriff of San Francisco County in charge of the CD, Defendant MIYAMOTO has at times relevant to this Complaint held a command and policy making position with regard to all county jails, including the Jails. Defendant MIYAMOTO has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Jails, as described fully below. There is a direct causal link between the affirmative acts and omissions of Defendant MIYAMOTO, as the chief supervisory member of the San Francisco Sheriff's Department's Custody Division, and the injuries and violations of rights set forth fully below. Defendant MIYAMOTO has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below. Defendant MIYAMOTO is sued in his individual capacity.

23. Defendant JASON JACKSON is, and at all times relevant to this Complaint was, the Captain of San Francisco County Sheriff Office's County Jail #4 located at 850 Bryant Street, San Francisco, California, 94103. As the captain with direct supervision over County Jail #4, Defendant JACKSON is responsible for the daily conditions and operations of County Jail #4, including the training and supervision of floor deputies and DOES 1 THRU 50. Defendant JACKSON is regularly, if not daily, on the premises at a San Francisco County Jail. It is his responsibility to be knowledgeable and familiar with the actual daily conditions and operations of County Jail #4. As the Captain of County Jail #4, Defendant JACKSON has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional,

and inhumane conditions, actions, policies, customs and practices that prevail at County Jail #4, as described fully below.  There is a direct causal link between the affirmative acts and omissions of Defendant Jackson, as the chief supervisory member of County Jail 4, and the injuries and violations of rights set forth fully below.   Defendant JACKSON has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below.  Defendant JACKSON is sued in his individual capacity.

24.     Defendant K. MCCONNELL is, and at all times relevant to this Complaint was, the Captain of San Francisco County Sheriff Office's County Jail #5 located at #1 Moreland Drive, San Bruno, California,  94066.  As the captain with direct supervision over County Jail #5, Defendant MCCONNELL is responsible for the daily conditions and operations of County Jail #5, including the training and supervision of floor deputies and DOES 1 THRU 50.  Defendant MCCONNELL is regularly, if not daily, on the premises at a San Francisco County Jail.  There is a direct causal link between the affirmative acts and omissions of Defendant Jackson, as the chief supervisory member of County Jail 5, and the injuries and violations of rights set forth fully below.    It is his responsibility to be knowledgeable and familiar with the actual daily conditions and operations of County Jail #5.  As the Captain of County Jail #5, Defendant MCCONNELL has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at County Jail #5, as described fully below.  Defendant MCCONNELL has, wholly or in part, directly and proximately caused and will, in the absence of the injunctive relief which Plaintiffs seek in this Complaint, continue in the future to proximately cause the injuries and violations of rights set forth fully below.  Defendant MCCONNELL is sued in his individual capacity.

25.     Each and every Defendant named herein was at all times relevant to this Complaint an officer or employee of the San Francisco County Sheriff's Department, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of the Sheriff and within the scope of their employment with the Sheriff.

26. Each and every individual Defendant was a command officer who had within his or her own powers, to choose action or inaction, and had the power and authority for the training, supervision and control of his or her subordinates in the manner in which Plaintiffs and members of the Plaintiff class were held in custody. Every individual Defendant's actions or inactions were a primary or significant causal factor in the constitutional deprivations alleged herein, and the injuries and harms complained of. Each individual Defendant had the power to effectuate the necessary change to prevent the constitutional deprivations and injuries and harms complained of, but failed and refused to do so. The actions or inactions of these individual, supervisory defendants set in motion a series of acts by others, including his or her subordinates, which the individual supervisors knew or reasonably should have known would cause others to inflict the constitutional injuries complained of herein. The actions or inactions each individual Defendant took, were demonstrations of reckless or callous indifference to the rights of Plaintiffs and members of the Plaintiff class.

27. Does 1 through 50 are supervisory staff who staff the Jails and all of whom contributed to the injuries, deprivations and losses complained of herein. The Doe defendants are sued in their individual capacities.

## FACTUAL ALLEGATIONS

### I. THE FACILITIES

28. San Francisco County operates two main detention jails, County Jail 4 and County Jail 5. County Jail 4 is on the 7th floor of the San Francisco Hall of Justice, which is located at 850 Bryant Street, San Francisco. The Hall of Justice and County Jail 4 were constructed in 1962. The Hall of Justice is still in operation along with County Jail 4. County Jail 4 (hereinafter "CJ4") has a capacity for 402 inmates and holds both pretrial and sentenced prisoners. County Jail 5 is located on watershed land on the outskirts of San Mateo County. Built in 2006, County Jail 5 (hereinafter "CJ5") replaced the former San Bruno Jail, and has a capacity of 768 inmates. Both CJ4 and CJ 5 incarcerate only men.

29. In CJ5 there are sixteen housing pods with 24 cells each. Cells hold two prisoners, so each housing pod has the capacity of 48 prisoners. Each Pod is a semi-circle. The cells are on two tiers, facing toward an open center. Along the opposite wall is the sheriff deputy's station, and between the deputy's station and the cells is the common area, usually containing tables, benches and chairs. The cells do not have bars, but the cell front is entirely clear glass.

30. In CJ4, the cells line corridors. The front of the cells are metal bars. Cell sizes can be for a single prisoner, two prisoners, six prisoners or 12 prisoners. In the 12-prisoner cells, there are bunk beds on one half, called the nighttime section, and the day room, which has table and benches. In the nighttime section, the bunk beds are perpendicular to the hallway so that the first bunk bed is easy to see, while the 6th bunk bed is at the opposite wall and difficult to see when standing in the hallway.

## II. SLEEP DEPRIVATION

31. According to the Centers for Disease Control and Prevention, an adult between the ages of 18 and 60 needs 7 or more hours of sleep per night for good health. Not getting enough sleep is linked with many chronic diseases and conditions, such as type 2 diabetes, heart disease, obesity, and depression. The National Institute of Health has published research showing that sleep deprivation negatively impacts cognitive functioning over time, contributes to accidents and errors and alterations in metabolic and endocrine function of individuals.

32. Although the schedule provides for a possible five hours of sleep, the entity and individual defendants have several practices, customs, and/or policies that cause the PLAINTIFFS and all class members to be chronically deprived of the essential and human need for sleep.

## III. LIGHTING SCHEDULE

33. Light disrupts human sleep, and San Francisco County Jails' lighting causes and/or contributes to the prisoners' regular and chronic sleep deprivation.

34. In CJ5, during lights out, the main lights in the community area and inside the cell are turned off, but inside the cell, a night light turns on. The night light is bright enough to read by. And in the common area, although the overhead lights are off, the deputy's station is lit, and there

are other lights which remain on, so that the common area is well-lit enough to see clearly, even at night. Because each cell has a clear glass front, all of that ambient light enters the cell.

35.  In CJ4, the cells line corridors. The front of the cells are metal bars. After lights out, the lights inside the cells go off, but the hallway lights remain on. Because of the bars, the hallway light enters the cell.

36.  In the Jails, lights out is at 10:30 p.m. and breakfast is served at 3:30. In CJ4, all prisoners eat in their cells, so when breakfast is served, prisoners have to rise and walk to the bars next to the hallway to receive their breakfast tray.

37.  In CJ5, prisoners in Housing Pod 7 and 4 are required to walk to the glass to receive their breakfast tray. On information and belief, plaintiffs allege that except for 7 and 4, the other Housing Pods require the prisoners to walk into the POD's common area to eat breakfast.

38.  For those individuals with medical conditions, including those with diabetes the Jails have a practice of forcing these individuals to wake up at 2:30 a.m. in order to conduct medical procedures. Diabetics are woken up at 2:30 a.m. in order to receive finger pricks to evaluate their blood sugar levels.

39.  As a result, the longest period of time in which PLAINTIFFS or any prisoner in the Jails is theoretically able to sleep at night is 5 hours, far less than the United States Center for Disease Control's recommended 7 hours. Many prisoners have a difficult time getting regular nighttime sleep because of the 24-hour lighting and the defendants' night time activities.

### IV.  VISUAL SAFETY CHECKS

40.  Pursuant to California Code of Regulations, tit. 15, § 1027.5, routine visual safety checks must be conducted of all prisoners at least hourly.

41.  At the Jails, deputy sheriffs tasked with performing visual safety checks do not limit their hourly routine checks to visual observations. Instead, said deputies engage in activities to actually wake up prisoners during the sleep period by shining bright red-light flashlights into the eyes of sleeping prisoners, and demanding that prisoners wake and display their ID bracelets to the guards during these checks. If the bright flashlights do not cause the sleeping prisoner to respond or acknowledge the deputy, deputies will bang on the metal doors or glass doors in order to force

prisoners to awaken and move or otherwise acknowledge the deputy. If banging does not work, guards will enter the cell and yell the prisoner's name until the prisoner wakes up. Thus, defendants force prisoners to awaken at least hourly. This activity is especially egregious along the mainline in CJ4, where the 12 person cells are on C block and B block. Due to the configuration of the cells, the deputies cannot easily see the beds towards the back of the cell and frequently and loudly demand that prisoners wake up, move, show their ID bracelets or otherwise acknowledge the guards. These checks are done frequently, often hourly or less, disrupting the sleep of everyone in the cell.

42. These practices cause and/or contribute to PLAINTIFFS' sleep deprivation.

## V.    DEPUTIES ACTIVITIES AND ANNOUNCEMENTS

43. During the nighttime sleep hours, the deputy sheriffs on duty have fewer responsibilities for prisoners because prisoners are locked down in their cells. Deputy sheriffs spend their timing walking along the cells. Because of the sleep deprivations and disruptions there are insomniacs among the prisoners. Deputies, due to their light duties, will stand outside cell glass and talk to these insomniacs, further disturbing the sleep of other prisoners.

44. At night, for various reasons, mostly, not exigent, announcements are made over the public address system, an added factor in sleep disruption.

## VI.   PILL CALLS & JAIL ACTIVITIES

45. During nighttime hours, the Jails distribute medication and medical attention. Prisoners who have diabetes are required to wake up at 2:30 to have finger pricks in order to have their blood sugar monitored. These activities and services are announced by loud verbal announcements, sometimes through the public address system, broadcast to all prisoners. On information and belief, plaintiffs allege that 5 to 10 percent of the prisoners in the Jails suffer from diabetes.

46. These actions are so disruptive and loud, waking up prisoners sharing that cell and those in neighboring cells, contributing to the prisoners' sleep deprivation.

## VII.  EFFECTS OF SLEEP DEPRIVATION ON INDIVIDUAL PLAINTIFFS

47.     **ANTOINE DEWHITT** is a pretrial detainee who has been in CJ5 since April 2013. He has been in custody for over six years. While in custody, he developed diabetes. On information and belief, he alleges that the development of diabetes is due in significant part to the high starch and vitamin deficient diet, including the lack of Vitamin D, the sleep deprivation and disruption and lack of outdoor exercise. As a result of his diabetes, he is woken up every day at 2:30 a.m. This results in ANTOINE, since his diagnosis of diabetes, of never having more than 4 hours of continuous nighttime sleep. He is extremely sleep deprived, has difficulty expressing himself, is short tempered, and has experienced a number of health concerns. He has experienced debilitating pain at times, difficulty getting out of bed, some paralysis, none of which has received appropriate medical attention. While the jail requires prisoners to be cooperative and non-violent, and imposes discipline including isolation and solitary confinement for prisoners who fail to be compliant, ANTOINE alleges that the Jails are deliberately forcing and coercing prisoners to be short-tempered, irritable and have difficulty communicating through their regular program and policy of sleep deprivation and sleep disruption. ANTOINE has suffered discipline as a result of mental confusion and disorientation due to his severe sleep deprivation. ANTOINE has requested and is receiving mental health counseling, however, mental health counseling does not get to the root of the problem, which is daily sleep deprivation and disruption, going on for years.

48.     **CORY BUTLER** is a pretrial detainee. He has been incarcerated since September 2017. He is currently incarcerated in CJ5. He has asserted his factual innocence and is preparing for trial. Due to his inability to sleep because of the jail's schedule, he is now experiencing mental and cognitive issues, including difficulty focusing and concentrating, and at times confusion and brain fog. CORY is extremely concerned that his declining mental acuity and inability to focus will hurt his ability to assist in his defense at trial. Therefore, it is of great urgency that he is able to rest, and properly prepare for his trial.

49.     **KISHAWN NORBERT** is a pretrial detainee. He has been incarcerated since July 2014. He asserts his factual innocence and is preparing for trial. He was incarcerated at CJ4 until a few months ago, when he was moved to CJ5. He is currently in administrative segregation, and subjected to environmental deprivation, and only allowed out of his cell for a half hour a day. As a

result of his long incarceration and the years being subjected to sleep disruption and sleep deprivation, he has developed some debilitating health problems, including frequent migraine headaches. The Jail only provides him with over the counter pain relievers, which have limited efficacy. These headaches cause him to be unable to function for long periods of time. On one of his cases, he is representing himself in pro-per, and due to the sleep deprivation, he is now experiencing mental and cognitive issues, including difficulty focusing and concentrating, and at times confusion and brain fog. He is concerned that he lacks energy, is not functioning well, does not communicating effectively and efficiently and has difficulty correctly comprehending what others are saying. He is impaired cognitively, functionally, mentally and emotionally. He has difficulty assisting in his defense in a meaningful manner and is cognitively impaired. His overall health is negatively impacted.

50. **DELON BARKER** and **JAVONN ALLEN** are currently incarcerated in CJ5. DELON BARKER has been in custody since November 2018. JAVONN ALLEN has been in custody since September 2018. Although JAVONN ALLEN has only been in custody for eight months and DELON BARKER has only been in custody for six months, they already feel the negative effects of sleep deprivation. They are experiencing depression, headaches, irritability, not wanting to socialize, difficulty focusing and reading, lack of interest. Also, as a result of the sleep deprivation, they have greater difficulty sleeping and are experiencing insomnia. They are already experiencing cognitive, functional, mental and emotional impairment.

51. **JOSE POOT** is currently an inmate at CJ4. He is a pretrial detainee and has been incarcerated since June 14, 2016. He is currently experiencing regular headaches, has no energy, and feels listless.

52. **MONTRAIL BRACKENS** is currently an inmate at CJ4. He is a pretrial detainee and has been incarcerated since December 11, 2012. MONTRAIL feels that he has difficulty thinking clearly, reading, learning new information, and concentrating. In addition, MONTRAIL's immune system is compromised and he has been subject, particularly in the last six months, to repeated colds, flus, respiratory problems. He lacks energy, and does not feel that he can get anything done.

53.     **KENYON NORBERT** is currently incarcerated at CJ4, having been moved there recently.  Previously, he was incarcerated at CJ5.  He is a pretrial detainee and has been incarcerated since July 8, 2014.  Partly as a consequence of the sleep disruption, he is experiencing insomnia, has difficulty falling asleep, and difficulty staying asleep.  He is easily woken up, and every time the sheriff deputies flash that very bright flashlight in his eyes, he is startled awake, which is a jarring and disruptive experience.  As a result of this chronic and daily jarring and disruptive sleep experience, it is a challenge for him to remain calm and composed.  He has gained almost 100 pounds, and is concerned that his health is compromised.  As a pretrial detainee, he has consistently asserted his factual innocence and seeks to prove his innocence at trial.  His inability to obtain rest, and the routine conduct of deputies in jarring him awake, nightly, is a form of torture.

54.     **MARSHALL HIGGINBOTHAM** is currently incarcerated at CJ5.  He is a pretrial detainee and has been incarcerated since December 2016.  For two and a half years, he has experienced routine, daily sleep deprivation and sleep disruption.  He is especially disturbed by the 24 hours of light in his cell.  He is impaired cognitively, functionally and psychiatrically.  He cannot assist in his defense in a meaningful manner and is cognitively impaired.  It appears that his overall health is being negatively impacted.

55.     As a result of this sleep disturbance and sleep deprivation, Plaintiffs' and all class members' overall health is negatively impacted.  They are experiencing memory loss, loss of words, loss of names, inability to focus, inability to concentrate and difficulty remembering sequences of events.  They are subject to headaches, migraines, depression, anxiety, and emotional distress, as well as overall health detriments, lack of energy, a compromised immune system, and an increased sensitivity to pain.

56.     Defendants are purposely operating and perpetuating an environment where plaintiffs and members of the class are deprived of the fundamental human needs, such as sleep, necessary for clear thinking and rational, logical decision making, patience and the ability to comprehend and cooperate.  Instead, Defendants have created and maintain an environment to set plaintiffs and members of the class to repeatedly fail.  Defendants then punish and discipline

Plaintiffs and members of the plaintiff class for "making bad choices" or their inability to comprehend and to follow Jail rules.

**CITY AND COUNTY OF SAN FRANCISCO'S**

**POLICY, CUSTOM, AND PRACTICE**

57.     The lights out and breakfast schedules are part of Defendants' adopted and written policies and procedures.  The purpose of these policies and procedures is for the ease of Defendants' operations in total disregard to the human needs and constitutional rights of prisoners to sleep.

58.     The Jails justify the unreasonably early breakfast time on two factors.  The first is the abnormal hour, 3:30 in the afternoon, in which the Jails serve dinner, so as to comply with Title 15's requirement that meals are not more than 12 hours apart.  The second is the time required to transport prisoners to court.  And while the transit from San Bruno to 850 Bryant Street takes only a half hour to 45 minutes at most, and court starts at 9 a.m., the Jails insist that transport of prisoners to court must begin at 4:30 a.m., which then justifies the 3:30 breakfast time.

59.     The nighttime wake-up for medication, particularly for diabetics is designed to accommodate the unreasonably early breakfast time.

60.     The 24 hour lighting in CJ5 is deemed a safety and security issue, but the Jails have not offered any means for inmates to mitigate the lights that disrupt and prevent their sleep.

61.     While 15 CCR 2017.5 requires "visual" safety checks of prisoners, there is no requirement that guards deliberately wake up prisoners on an hourly basis, or require that prisoners wake up and move.  These alleged "requirements" are policy developments by Defendants which are not required by code or law or regulation, in total disregard to the  human needs and constitutional rights of prisoners to sleep.  Sheriff deputies and employees are specifically instructed and trained by Defendants and each of them to execute these safety checks in a manner which is purposely, deliberately and results in the sleep disruption of the prisoners under their custody.

**CLASS ACTION ALLEGATIONS**

62.     All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all prisoners who are now, or will be in the future, incarcerated in the San Francisco County Jails ("Prisoner Class").

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

63.     The Prisoner Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible. Currently, there are approximately 1,200 prisoners in custody on any one day in the Jails and on information and belief allege that approximately 30,000 prisoners are processed and incarcerated in the course of the year in the Jails.  All prisoners in the Jails are subject to Defendants' policies and procedures regarding sleep denial and sleep disturbance and the refusal to permit grievances.  Due to these policies, customs, and practices, all prisoners in the Jails are currently harmed or are at substantial risk of being harmed.

64.     The Prisoner Class members are identifiable using records maintained in the ordinary course of business by Defendants.

**Commonality: Fed. R. Civ. P. 23(a)(2)**

65.     There are multiple questions of law and fact common to the Prisoner Class, including, but not limited to:

a. Whether the jail's requirement that prisoners be in lit surroundings 24 hours a day violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

b. Whether Defendants' scheduling that provides for only a maximum potential duration of five hours of nighttime sleep violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

c. Whether Defendants' policies and practices of regular sleep disruption violate the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

d. Whether Defendants' policies and practices of not permitting prisoners to have a sufficient block of uninterrupted sleep pose a substantial risk of serious harm to prisoners in their custody;

e. Whether Defendants have been deliberately indifferent to the Prisoner Class members' risk of injury and harm from the scheduling of an insufficient duration of sleep and the regular disruption of the limited sleep duration they are provided;

66.     Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

67.     The claims of the named Plaintiffs are typical of the claims of the members of the proposed class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the Prisoner Class claims.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

68.     Plaintiffs will fairly and adequately represent and protect the interests of the putative Prisoner Class members and diligently service as Class Representatives. Plaintiffs' interests are co-extensive with those of the Prisoner Class and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the Prisoner Class.

**Fed. R. Civ. P. 23(b)**

69.     This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendants' policies, practices, actions, and omissions that form the basis of the claims of the Prisoner Class are common to and apply generally to all members of the Prisoner Class. All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Prisoner Class.

70. The claims of the named plaintiffs are typical of the claims of the class. The claims of the class members arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

## PRISONER SUB-CLASS ACTION ALLEGATIONS

71. All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all prisoners who have medical conditions that currently subject them to be woken up at 2:30 a.m. for medical treatment, medication or medical testing, including those who suffer from diabetes, who are now, or will be in the future, incarcerated in the San Francisco County Jails ("Prisoner Sub-class").

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

72. The Prisoner-Sub Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible. On information and believe, plaintiffs allege that 5% to 10% of all prisoners in the Jails suffer from diabetes, so that the current sub-class numbers 60 to 120 persons. As discovery has not yet commenced, plaintiffs assert on information and belief that the number of sub-class members is actually larger as there are other prisoners with medical conditions, in addition to diabetes, who are now being woken up at 2:30 a.m. On information and belief, plaintiffs allege that within a year's time, the Jails process and houses approximately 1,000 prisoners with medical conditions who they routinely wake up at 2:30 a.m. All prisoners in the Jails are subject to Defendants policies and procedures regarding sleep denial and sleep disturbance and the refusal to permit grievances. Due to the Jails' policies and procedures, all prisoners in the Jails are currently harmed or are at substantial risk of being harmed, due to the fact that these 2:30 a.m. medical events are noisy, and wake up all prisoners in the vicinity of the members of this prisoner sub-class.

73. The Prisoner Sub-Class members are identifiable using records maintained in the ordinary course of business by Defendants.

**Commonality: Fed. R. Civ. P. 23(a)(2)**

74.     There are multiple questions of law and fact common to the Prisoner Sub-Class, in addition to the common questions of law and fact for the general class including, but not limited to:

a. Whether the jail's requirement that prisoners be woken up at 2:30 a.m. for ostensible medical treatment and testing, necessitated by unrelated jail scheduling (such as the time of dinner service, and the jail's convenience in transporting prisoners to court) violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

b.     Whether Defendants' scheduling that provides for only a maximum potential duration of four hours of nighttime sleep violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

c. Whether Defendants' policies and practices of regular sleep disruption violate the Due the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

d. Whether Defendants' policies and practices of not permitting Prisoner Sub-Class members to have a sufficient block of uninterrupted sleep poses a substantial risk of serious harm to those in their custody;

e. Whether Defendants have been deliberately indifferent to the Prisoner Sub-Class members' risk of injury and harm from the scheduling of an insufficient duration of sleep and the regular disruption of the little sleep they are given, insufficient as it is;

75.     Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

76.     The claims of the named Plaintiffs are typical of the claims of the members of the Prisoner Sub-Class as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the Prisoner Class claims.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

77.     Plaintiffs will fairly and adequately represent and protect the interests of the Prisoner Sub-Class and diligently service as Class Representatives.  Plaintiffs' interests are co-extensive with those of the Prisoner Sub-Class and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members.  Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the Prisoner Class.

**Fed. R. Civ. P. 23(b)**

78.     This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendants' policies, practices, actions, and omissions that form the basis of the claims of the Prisoner Class and Prisoner Sub-Class are common to and apply generally to all members of the Prisoner Class.  All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Prisoner Sub-Class.

79.     The claims of the named plaintiffs are typical of the claims of the Prisoner Sub-Class.  The claims of the Prisoner Sub-Class arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

## FIRST CAUSE OF ACTION

VIOLATION OF FOURTEENTH AMENDMENT RIGHTS BY DENYING PLAINTIFFS AND OTHER  PRISONERS THEIR BASIC HUMAN RIGHT TO NECESSARY SLEEP

**(Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

80.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs 1-79 with the same force and effect as if fully set forth herein.

81.     The First Claim is asserted by Plaintiffs and all class members against Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50.

82.     By their policies, customs, and practices described above, including but not limited to the Jails' nighttime lighting, Jail schedules, nighttime activities and the manner in which the Jail conducts safety checks, Defendants subject Plaintiffs, the Prisoner Class, and the Prisoner Sub-Class

members to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration. The conditions in the Jails administered by the Defendants that have and will continue to unreasonably deprive the Plaintiffs and all class members of sleep result in a constitutional deprivation under the Fourteenth Amendment.

83. By preventing prisoners from getting the necessary amount of sleep, the Defendants' policies, customs, and practices create a detention condition causing harm that exceeds or is independent of the inherent discomforts of confinement, and which is rationally unrelated to a legitimate nonpunitive governmental objective or is excessive in relation to that purpose.

84. These policies, customs, and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and all class members' ongoing deprivation of due process rights secured by the United States Constitution under the Fourteenth Amendment, are not rationally related to a legitimate nonpunitive governmental purpose, or are excessive in relation to any such nonpunitive governmental purpose.

85. The policies, practices and customs described above are the official policies, practices, and customs of Defendant SAN FRANCISCO COUNTY, and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Fourteenth Amendment. The policies, practices, and customs described above include Defendant SAN FRANCISCO COUNTY's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

86. Individually, a causal connection exists between Defendants HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions in promulgating their policies, practices and customs and the constitutional violations complained of herein because these individual Defendants set in motion a series of acts by others, namely the implementation of said policies, customs, and practices by their subordinates that resulted in sleep disruption and deprivation, and/or knowingly refused to terminate said series of acts by others, which these individual Defendants knew or reasonably should have known would cause their subordinates to inflict constitutional injuries.

87. Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the Prisoner Class and the Prisoner Sub-Class they represent

request relief as outlined below.

## SECOND CAUSE OF ACTION

VIOLATION OF EIGHTH AMENDMENT RIGHTS

(BASIC HUMAN RIGHT TO SLEEP)

**(Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

88.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs 1-79 with the same force and effect as if fully set forth herein.

89.     The Second Claim is asserted by Plaintiffs and all class members against Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50.

90.     By their policies and practices described above, including but not limited to the Jails' nighttime lighting, Jail schedules, nighttime activities and the manner in which the Jail conducts safety checks, Defendants subject Plaintiffs and the class members they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of daily insufficient sleep duration.   A minimal duration of sleep is a minimal civilized measure of the necessity of life.

91.     These policies and practices have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Plaintiffs' and all class members' ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.  The policies, practices and customs described above are the official policies, practices and customs of Defendant SAN FRANCISCO COUNTY, and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Eighth Amendment. The policies, practices and customs described above include Defendant SAN FRANCISCO COUNTY's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

92.     Individually, a causal connection exists between Defendants HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions in promulgating their policies, practices and customs and the constitutional violations complained of herein because these individual Defendants set in motion a series of acts by others, namely the implementation of said policies, customs, and practices by their subordinates that resulted in sleep disruption and deprivation, and/or knowingly refused to terminate said series of acts by others, which these

individual Defendants knew or reasonably should have known would cause their subordinates to inflict constitutional injuries.

93.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined below.

### THIRD CAUSE OF ACTION

VIOLATION OF DUE PROCESS & FOURTEENTH AMENDMENT RIGHTS

(SLEEP DISRUPTION)

**(Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983)**

94.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs 1-79 with the same force and effect as if fully set forth herein.

95.     The Third Claim is asserted by Plaintiffs, the Prisoner Class, and the Prisoner Sub-Class they represent, against Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50.

96.     By their policies, practices and direct actions described above, including but not limited to the Jails' nighttime lighting, Jail schedules, nighttime activities and the manner in which the Jail conducts safety checks, Defendants subject Plaintiffs and the class members they represent, to a substantial risk of serious harm and injury from the harmful and inhumane effects of regular sleep disturbance. The conditions in the Jails administered by the Defendants that have and will continue to unreasonably deprive the Plaintiffs and all class members of sleep result in constitutional deprivations under the Fifth and Fourteenth Amendments.

97.     By preventing prisoners from getting the necessary amount of sleep, the Defendants' policies, customs, and practices create a detention condition causing harm that exceeds or is independent of the inherent discomforts of confinement, and which is rationally unrelated to a legitimate nonpunitive governmental objective or is excessive in relation to that purpose.

98.     These policies, practices and direct actions have been, and continue to be, implemented by Defendants and their agents, officials, employees and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of

23

Plaintiffs' and all class members' ongoing deprivation of due process rights secured by the United States Constitution under the Fifth and Fourteenth Amendments, are not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to any such nonpunitive governmental purpose.

99. The policies, practices and direct actions described above are the official policies, practices and customs of Defendant SAN FRANCISCO COUNTY and are the direct and proximate cause of Plaintiffs being subjected to known risks of serious harms in violation of the Fifth and Fourteenth Amendment. The policies, practices and customs described above include Defendant SAN FRANCISCO COUNTY's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

100. Individually, a causal connection exists between Defendants HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions in promulgating their policies, practices and customs and the constitutional violations complained of herein because these individual Defendants set in motion a series of acts by others, namely the implementation of said policies, customs, and practices by their subordinates that resulted in sleep disruption and deprivation, and/or knowingly refused to terminate said series of acts by others, which these individual Defendants knew or reasonably should have known would cause their subordinates to inflict constitutional injuries.

101. Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined below.

## FOURTH CAUSE OF ACTION

VIOLATION OF EIGHTH AMENDMENT RIGHTS

CRUEL AND UNUSUAL PUNISHMENT OF REGULAR SLEEP DISRUPTION

**(Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983)**

102. PLAINTIFFS, repeat and re-allege the allegations in paragraphs 1 to 79 to the extent relevant, as if fully set forth in this Claim.

103. The Fourth Claim is asserted by Plaintiffs, the Prisoner Class, and the Prisoner Sub-Class they represent, against Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50.

104. Defendants JACKSON and MCCONNELL and DOES 1 THRU 25, acting or purporting to act in the performance of their official duties, subjected Plaintiffs and the members of the prisoner class' to ongoing and regular sleep disturbances in violation of their rights secured by the Eighth Amendment of the U.S. Constitution.

105. Defendants JACKSON and MCCONNELL and DOES 1 THRU 25, acting or purporting to act in the performance of their official duties, failed to intercede and/or were integral participants to complained of actions of deliberating disturbing and interfering with Plaintiffs and the members of the prisoner class' right to the human necessity of sleep, in violation of their rights secured by the Eighth Amendment of the U.S. Constitution.

106. Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, and DOES 26 to 50, acting under color of state law and as policymaking authorities, knew or should have known that subordinate employees under their command, including Defendants JACKSON, MCCONNELL, and DOES 1 THRU 25, were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices concerning the actions of regularly disturbing and interfering with prisoners' sleep in violation of Plaintiff s and all class members' right to the human necessity of sleep, secured by the Eighth Amendment of the U.S. Constitution.

107. The policies, practices and direct actions described above are the official policies, practices and customs of Defendant SAN FRANCISCO COUNTY, and are the direct and proximate cause of Plaintiffs and the prisoner class members' and the Prisoner Sub-Class being subjected to known risks of serious harms in violation of the Eighth Amendment. The policies, practices and customs described above include Defendant SAN FRANCISCO COUNTY's failure to train its staff in the face of an obvious need for training to prevent the violations described above.

108. Individually, a causal connection exists between Defendants HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions in promulgating their policies, practices and customs and the constitutional violations complained of herein because these

individual Defendants set in motion a series of acts by others, namely the implementation of said

policies, customs, and practices by their subordinates that resulted in sleep disruption and

deprivation, and/or knowingly refused to terminate said series of acts by others, which these

individual Defendants knew or reasonably should have known would cause their subordinates to

inflict constitutional injuries.

109.    Defendants have been and are aware of all of the deprivations complained of herein,

and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and all class members they represent request relief as outlined

below.

### FIFTH CAUSE OF ACTION

**(Article I, Section 7 of the California Constitution)**

110.    PLAINTIFFS re-repeat and re-allege the allegations in paragraphs 1 to 79 to the extent

relevant, as if fully set forth in this Claim.

111.    The Fifth Cause of Action is asserted by Plaintiffs. the Prisoner Class, and the Prisoner

Sub-Class they represent against all Defendants.

112.    Defendants, by deliberately preventing Plaintiffs and all class members from being

able to obtain adequate sleep both by limiting the available time for night time sleep and through

actions that interrupt, interfere, disrupt and disturb night time sleep, imposes an atypical, substantial,

and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to

create a liberty interest protected by due process.   By their policies and practices described above,

Defendants subject Plaintiffs and the Prisoner Classes they represent, to a substantial risk of harm due

to the denial of due process in relationship to the ordinary, human requirement of sleep.  These

policies and practices have been, and continue to be, implemented by Defendants and their agents or

employees in their official capacities, and are the proximate cause of Plaintiffs' and the Prisoner

Classes' ongoing deprivation of rights secured by the California Constitution, Article I, Section 7.

113.    Individually, a causal connection exists between Defendants HENNESSY's,

MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions in promulgating their

policies, practices and customs and the constitutional violations complained of herein because these

individual Defendants set in motion a series of acts by others, namely the implementation of said policies, customs, and practices by their subordinates that resulted in sleep disruption and deprivation, and/or knowingly refused to terminate said series of acts by others, which these individual Defendants knew or reasonably should have known would cause their subordinates to inflict constitutional injuries.

114. Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the class members they represent request relief as outlined below.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE

115. PLAINTIFFS repeat and re-allege the allegations in paragraphs 1 to 79 to the extent relevant, as if fully set forth in this Claim.

116. The Sixth Cause of Action is asserted by Plaintiffs, the Prisoner Class, and the Prisoner Sub-Class against Defendants HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's

117. Defendants HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's actions and inactions were motivated by evil motive or intent, involved reckless or callous indifference to Plaintiffs' rights secured by the Eighth and Fourteenth Amendments of the U.S. Constitution, or were wantonly or oppressively done.

118. As a direct and proximate result of Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions and inactions, Plaintiffs and members of the class suffered injuries entitling them to receive compensatory damages against Defendants SAN FRANCISCO COUNTY, SHERIFF, HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50.

WHEREFORE, Plaintiffs and class members pray for relief as hereunder appears.

## SEVENTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(Cal. Gov. Code § 820(a))

119.     PLAINTIFFS, the Prisoner Class, and the Prisoner Sub-Class repeat and re-allege the allegations in paragraphs 1 to 79 to the extent relevant, as if fully set forth in this Claim.

120.     The Seventh Cause of Action is asserted by Plaintiffs, the Prisoner Class, and the Prisoner Sub-Class against Defendants HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's JACKSON, MCCONNELL, and DOES 1 to 50.

121.     Defendants HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's in the performance of their official duties as peace officers, engaged in outrageous conduct and, as a result of that outrageous conduct, Plaintiffs and members of plaintiff class did suffer and continue to suffer severe emotional distress.

122.     Defendants HENNESSY's, MIYAMOTO's, JACKSON's, MCCONNELL's and DOES 1 to 50's actions and inactions constituted oppression and/or malice resulting in great harm to Plaintiffs and members of plaintiff class.

123.     As a direct and proximate result of Defendants HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's actions and inactions, Plaintiffs and all members of plaintiff class suffered injuries entitling them to receive compensatory and punitive damages against Defendants JACKSON, MCCONNELL, and DOES 1 to 50. HENNESSY, MIYAMOTO, JACKSON, MCCONNELL and DOES 1 to 50's.

WHEREFORE, Plaintiffs and class members prays for relief as hereunder appears.

## REQUEST FOR RELIEF

Plaintiffs and the class and subclass they represent have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request.  Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the constitutions and laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the constitutions and laws of the United States and the State of California.

WHEREFORE, PLAINTIFFS and all class members pray for judgment and the following relief against DEFENDANTS:

1.  Enter injunctive relief directing DEFENDANTS, absent exigent circumstances to:

    a.  Provide all prisoners with the ability to have uninterrupted and undisturbed block of night time sleep of no less than 7 hours.

    b.  Prohibit correctional staff from waking prisoners during the nighttime sleeping hours including during any safety checks;

    c.  Schedule medication distribution and medical procedures no earlier than breakfast time.

    d.  Refrain from making announcements over the jail public address system during the nighttime sleep hours;

    e.  Provide comprehensive physical and mental health services to any prisoner as needed;

2.  Award compensatory and punitive damages;

3.  Award declaratory relief according to proof;

4.  Award PLAINTIFFS costs and expense of this action and reasonable attorney's fees in accordance with 42 U.S.C. § 1988 and other appropriate authority;

5.  An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

6.  Such other and further relief as the case requires and the Court deems just and proper.

Dated: May 20, 2019          LAW OFFICE OF YOLANDA HUANG


By:__ */s/ Yolanda Huang*_____
          YOLANDA HUANG

**COMPLAINT**
*Poot et al. v. San Francisco County Sheriff's Department et al.,* United States District Court, Northern District of California, Case No._____