1  DAVID CHIU, State Bar #189542
   City Attorney
2  MEREDITH B. OSBORN, State Bar #250467
   Chief Trial Attorney
3  RENEÉ E. ROSENBLIT, State Bar #304983
   KAITLYN MURPHY, State Bar #293309
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
6  Telephone:      (415) 554-3853 [Rosenblit]
   Telephone:      (415) 554-3867 [Murphy]
7  Facsimile:      (415) 554-3837
   E-Mail:         renee.rosenblit@sfcityatty.org
8  E-Mail:         kaitlyn.murphy@sfcityatty.org

9
   Attorneys for Defendants
10 CITY AND COUNTY OF SAN FRANCISCO
   VICKI HENNESSY, PAUL MIYAMOTO, JASON JACKSON,
11 AND KEVIN MCCONNELL

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15 | JOSE POOT, KISHAWN NORBERT, | Case No. 19-cv-02722 YGR (SK)
   | KENYON NORBERT, MARSHALL |
16 | HIGGINBOTHAM, ANTOINE DEWHITT, | **DEFENDANTS' MOTION TO ENFORCE**
   | CORY BUTLER, MONTRAIL BRACKENS, | **SETTLEMENT, OR IN THE ALTERNATIVE,**
17 | DELON BARKER, and JAVONN ALLEN, on | **MOTION TO DISMISS FOR FAILURE TO**
   | behalf of themselves individually and others | **PROSECUTE (ECF NO. 53)**
18 | similarly situated, as a class and subclass, |

19          Plaintiffs,                        Hearing Date:    September 6, 2022
                                                Time:            2:00 p.m.
20      vs.                                     Place:           Oakland Courthouse
                                                                 1301 Clay Street
21 SAN FRANCISCO COUNTY SHERIFF'S                                 4th Fl., Courtroom 1
   DEPARTMENT, CITY AND COUNTY OF                                 Oakland, CA 94612
22 SAN FRANCISCO, SAN FRANCISCO
   SHERIFF VICKI HENNESSY; CHIEF                 Trial Date:      Not Set
23 DEPUTY SHERIFF PAUL MIYAMOTO;
   CAPTAIN JASON JACKSON, CAPTAIN
24 MCCONNELL AND JOHN AND JANE
   DOES, NOS. 1 -50,
25
           Defendants.
26

27

28

Defs' Motion to Enforce Settlement                    n:\lit\li2019\191336\01612663.docx
Case No. 19-cv-02722 YGR (SK)

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

    I.     FACTUAL BACKGROUND ................................................................................ 2

          A.    Settlement Efforts With Judge Beeler .......................................................... 3

          B.    Terms of The Settlement .............................................................................. 4

          C.    Litigation History Post-Settlement ............................................................. 5

    II.    LEGAL STANDARD AND ARGUMENT ......................................................... 7

          A.    The Court Should Enforce The Settlement Agreement Between the Parties ........................................................................................................... 7

          B.    In The Alternative, The Court Should Dismiss Plaintiffs' Complaint With Prejudice For Failure to Prosecute ................................................... 9

               1.    The Public's Interest in Expedient Resolution of the Case Strongly Favors Dismissal .............................................................. 10

               2.    The Court's Need to Manage Its Own Docket Strongly Favors Dismissal .................................................................................... 10

               3.    The Risk of Prejudice to the Defendant From Permitting Plaintiffs' Conduct Strongly Favors Dismissal ............................ 11

               4.    The Availability of Less Drastic Alternatives Favors Dismissal ... 12

               5.    Public Policy Favoring Disposition of Cases on Their Merits Strongly Favors Dismissal ............................................................. 12

    III.   CONCLUSION .................................................................................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**State Cases**

*Blix St. Record, Inc. v. Cassidy*
    191 Cal. App. 4th 39 (2010) ............................................................................8

*Elyaoudayan v. Hoffman*
    104 Cal. App. 4th 1421 (2012) .......................................................................9

**State Statutes & Codes**

California Code of Civil Procedure  § 664.6(a) ...................................................8

**Federal Cases**

*Adams v. Johns-Manville Corp.*
    876 F.2d 702 (9th Cir. 1989) ..........................................................................7

*Ash v. Cvetkov*
    739 F.2d 493 (9th Cir. 1984) .....................................................................10, 11

*Baeza v. Baca*
    700 F. App'x 657 (9th Cir. 2017) ..................................................................10

*Callie v. Near*
    829 F.2d 888 (9th Cir. 1987) ..........................................................................7

*Collins v. Thompson*
    679 F.2d 168 (9th Cir. 1982) ..........................................................................7

*Davis v. City & Cnty. of San Francisco*
    2006 WL 140568 (N.D. Cal. Jan. 17, 2006)...............................................10

*Dharia v. Marriott Hotel Servs., Inc.*
    2020 WL 1861656 (D. Haw. Apr. 13, 2020)..........................................10, 11

*Dionisio v. Midland Credit Mgmt.*
    2019 WL 3410396 (E.D. Cal. July 29, 2019)..........................................10, 11

*Fid. Phila. Tr. Co. v. Pioche Mines Consol., Inc.*
    587 F.2d 27 (9th Cir. 1978) .......................................................................9, 11

*Hunter v. Sandoval*
    2018 WL 6570870 (C.D. Cal. Dec. 12, 2018)..............................................13

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ........................................................................7

*Li Dong Ma v. RSM McGladrey, Inc.*
    2010 WL 11586815 (N.D. Cal. Aug. 9, 2010) ............................................10

*Marani v. Cramer*
  2021 WL 254308 (N.D. Cal. Jan. 26, 2021) ...................................................................7

*Menbreno v. Stringer*
  785 F. App'x 361 (9th Cir. 2019) ...............................................................................10

*Midland Credit Mgmt., Inc.,Telephonic Consumer Prot. Act Litig.*
  2019 WL 468846 (S.D. Cal. Feb. 6, 2019) ..................................................................12

*Moore v. Addus HealthCare, Inc.*
  2020 WL 127667 (N.D. Cal. Jan. 10, 2020) .........................................................10, 11

*Pagtalunan v. Galaza*
  291 F.3d 639 (9th Cir. 2002) .............................................................................10, 11

*Stonebrae, L.P. v. Toll Bros.*
  2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ...............................................................12

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*
  962 F.2d 853 (9th Cir. 1992) ....................................................................................7

*Zhiqiang Cao v. U.S. Bancorp, N.A.*
  2011 WL 3794949 (N.D. Cal. Aug. 26, 2011) .....................................................10, 11, 12

**Rules**

Federal Rule of Civil Procedure 41(b) ......................................................................1, 2, 9

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 6, 2022, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers, in Courtroom 1, 4th Floor at U.S. District Court, 1301 Clay Street in Oakland, California, or as soon thereafter as this matter can be heard, Defendants will and hereby do move for an order enforcing the settlement among the parties. In the alternative, Defendants seek dismissal with prejudice of all Plaintiffs' claims in this action pursuant to Rule 41(b) of the Federal Rule of Civil Procedure.

Defendants are entitled to enforcement of the valid and binding settlement agreement put on the record before Judge Beeler. Plaintiffs cannot refuse to abide by their obligations under the terms of the settlement—including their obligation to file a joint motion for preliminary approval of the class claims—on the basis that they have buyer's remorse. In the alternative, Defendants are entitled to dismissal of all Plaintiffs' claims because Plaintiffs failed to take any steps to prosecute this action in nearly two years, thereby prejudicing Defendants and hijacking resolution of the litigation.

This motion to dismiss shall be based on this Notice of Motion and Supporting Memorandum of Points and Authorities, the Declaration of Kaitlyn Murphy, and the Proposed Order, all filed or lodged herewith, as well as the file in this case, the argument of counsel at the hearing, and any such further matters as the Court deems appropriate.

DAVID CHIU
City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy
RENEÉ E. ROSENBLIT
KAITLYN MURPHY
Deputy City Attorneys


By: _____*/s/ Kaitlyn Murphy*_____
KAITLYN MURPHY

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
VICKI HENNESSY, PAUL MIYAMOTO,
JASON JACKSON, AND KEVIN MCCONNELL

## MEMORANDUM OF POINTS AND AUTHORITIES

The parties settled this class action civil rights lawsuit nearly two years ago in September 2020, after extensive settlement discussions with Magistrate Judge Beeler. The written settlement agreement, which was incorporated by reference into the hearing record, required the parties to use their best efforts to seek preliminary and final approval of the settlement from the Court. Yet, Plaintiffs and their counsel have refused to comply with their obligation to do so. Instead, Plaintiffs are holding the motion for preliminary approval hostage in an attempt to force Defendants to renegotiate the terms of the settlement. This is improper.

To the extent Plaintiffs have concerns with whether or not the Defendants are abiding by their obligations under the terms of the settlement, the settlement agreement contains a dispute resolution process. Defendants disagree any of their conduct is inconsistent with the terms of the settlement, but even if it were, that would not be a valid basis for Plaintiffs to refuse to comply with their own obligations to move forward with the motion for preliminary approval. Accordingly, Defendants move for a Court order enforcing the terms of the settlement and in particular requiring Plaintiffs and their counsel (1) to file a motion for preliminary approval of the settlement based on the terms of the parties' agreement and (2) to use their best efforts to obtain Court approval of the class action settlement.

In the alternative, Defendants move that the Court dismiss Plaintiffs' action with prejudice for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Plaintiffs have done nothing in the nearly two years since the parties' settlement to advance their claims or the resolution of this lawsuit. They should not be permitted to tax Defendants' and the Court's resources without doing anything to bring this matter to its conclusion.

## I.    FACTUAL BACKGROUND

Plaintiffs filed a putative class action lawsuit on May 20, 2019, challenging the sleep schedule at two San Francisco jails: County Jail 4 in downtown San Francisco and County Jail 5 in San Bruno. (ECF No. 1.)[1] Plaintiffs alleged the jails provided insufficient "lights out" time in the evening and that

---

[1] County Jail 4 closed in 2020 and County Jail 5 has been renamed County Jail 3. Defendants continue to refer to the facilities using the numbering system in effect at the time Plaintiffs filed their complaint to avoid confusion.

the deputies who performed evening safety checks did so in a disruptive way that awoke inmates during the "lights out" period. The parties notified the Court of a related case, *Norbert et al. v. City and County of San Francisco Sheriff's Department*, et al., 3:19-cv-02724-SK, brought by the same Plaintiffs' counsel and many of the same Plaintiffs, challenging inmates' opportunity for outdoor recreation in the same two jails. (ECF No. 15.) Judge Beeler was already managing settlement discussions in *Norbert* and the Court referred this matter to her for purposes of settlement as well. (ECF No. 22.)

**A.    Settlement Efforts With Judge Beeler**

Judge Beeler contributed substantial time to the parties' settlement efforts. She held no fewer than five conferences in the span of six months on February 27, 2020, March 5, 2020, April 23, 2020, May 14, 2020, and August 20, 2020. (ECF No. 34, 35, 37, 41, 46.) After the August 20, 2020 conference, Judge Beeler issued an order that: "The [City and County of San Francisco] will circulate settlement agreements in all . . . cases covering the issues in *Norbert* and *Poot* by tomorrow. The *Poot* plaintiffs will respond by Monday." (ECF No. 46.) Judge Beeler held a subsequent conference on September 3, 2020, after which her minute entry stated "the parties reached agreement in the *Norbert* and *Poot* cases on almost all terms" and ordered the City to circulate a final settlement agreement. (ECF No. 49.)

This case settled on September 18, 2020. Judge Beeler put the material terms of the settlement on the record at a hearing the same day. (ECF No. 53; Murphy Declaration Ex. A ("Settlement"); Ex. B ("Settlement Tr.").) All counsel affirmed to the Court that they had authority from their clients to enter into the settlement. (Settlement Tr. at 2:12-25.) The parties negotiated the material terms of the settlement through a written agreement ("Settlement"). Judge Beeler memorialized the terms of Settlement by incorporating the written agreement into the hearing record by reference. (Settlement Tr. at 3:1-11.) Judge Beeler stated the Settlement was "subject to the ordinary contingencies of approval of the governing authority for the defendants," referring to approval from the San Francisco Board of Supervisors and the Mayor, and stated after the relevant approvals the "Parties will then file a joint motion for preliminary approval of the class action settlement." (ECF No. 53.) The Board of

Supervisors passed an ordinance approving the settlement on April 13, 2021, which was approved by Mayor Breed on April 23, 2021. (Murphy Decl. ¶ 4.)

### B.    Terms of The Settlement

The parties bound themselves to the terms of the written settlement agreement. The Settlement was entered on behalf of each plaintiff "individually, and on behalf of all members of the Settlement Class" and "provides for the dismissal of this case with prejudice in exchange for policy changes in the San Francisco County jail system and an award of attorney's fees and costs." (Settlement ¶ 1.) The Settlement Class includes "all inmates housed in County Jails 4 or 5 from any point from three years prior to the filing of this action through today." (Settlement ¶ 6.) The parties stated they "believe[d] th[e] Settlement Agreement is fair, reasonable, and adequate to protect the interests of all parties" and that through the Settlement they "wish[ed] to effectuate a complete resolution and settlement of all claims, disputes, and controversies relating to Plaintiffs' allegations by settling this lawsuit." (Settlement ¶ 4.)

The parties acknowledged that the jail's policies at the time of settlement allowed for seven consecutive hours of "lights-out" time, with inmates in County Jail 5 receiving additional "lights-out" time after breakfast. (Settlement ¶¶ 40, 45.) Defendants agreed "to notify Plaintiffs' counsel if [the Sheriff's Office] changes the nighttime lights on/lights off schedule at County Jail 5 within one year following settlement of this litigation." (*Id.*) Defendants also agreed to provide deputies who perform the evening safety checks with refresher trainings "to remind the deputies of the purpose of these safety checks and that noise or disruptions to rouse inmates should not be used for any purpose other than to secure inmate health or welfare to ensure that these checks are not needlessly disturbing inmate sleep."  (Settlement ¶¶ 55-57.)

The Settlement set out a process to manage enforcement issues. The parties consented to district court jurisdiction "over all disputes between and among the parties arising out of this Settlement Agreement for a period of 12 months after the Court's final approval of the Settlement Agreement." (Settlement ¶¶ 58, 74.) If Plaintiffs' counsel believed any defendant was in violation of the material terms of the settlement, she could notify Defendants in writing of the facts supporting the concern. (Settlement ¶ 61.)  Defendants then would have 30 days to investigate the allegations and

respond in writing. (*Id.*) If necessary, the parties could conduct negotiations and, if unable to resolve the dispute, either party could bring the issue to the court. (*Id.*)

The parties recognized any settlement would need Court approval because this is a putative class action. Therefore, the Settlement also describes the parties' mutual responsibility to secure Court approval. Counsel for all parties agreed to "take all reasonable steps to ensure that this Agreement is approved by the Court and becomes effective." (Settlement ¶ 12.) The parties agreed to:

> jointly file th[e] Settlement Agreement with the Court, and ask that the Court issue an order directing notice to the class, setting an objection period, and a fairness hearing ("Preliminary Approval") and approve it as final after the fairness hearing ("Final Approval.") Final Approval and the issuance of the final order and judgment of dismissal by the Court are conditions precedent to the Settlement Agreement's effectiveness, except as to the specific steps that the parties herein agree to perform after Preliminary Approval.

(Settlement ¶ 9; *see also* ¶ 12.)

In executing the Settlement, the class representatives acknowledged they were "acting on their own, independent judgment informed by their legal counsel," acknowledged "having read the Settlement Agreement and having been advised by Class Counsel as to its meaning end effect," and warranted that "their execution of the Settlement Agreement is free and voluntary." (Settlement ¶ 73.)

### C.    Litigation History Post-Settlement

After notification from Judge Beeler that the matter had settled, this Court vacated the case schedule and set a compliance deadline for January 22, 2021, for the parties to file a motion for preliminary approval or a joint explanation of their failure to comply. (ECF No. 54.)

On December 23, 2020, defense counsel contacted Plaintiffs' counsel "to coordinate the motion for preliminary approval," inquiring when Plaintiffs' counsel anticipated being able to send the City a draft. (Murphy Decl. Ex. C.) Plaintiffs' counsel responded on January 6, 2021, and for the first time in the three-and-a-half months since the Settlement was reached, raised concerns with the current jail policies. (Murphy Decl. Ex. D.) Plaintiffs' counsel stated two days later on January 8, 2022: "I will not be forwarding a motion for your review given the situation. If you want to set up a time to discuss it, please let me know." (Murphy Decl. Ex. E.) The parties held a meet and confer and jointly requested the Court reset the compliance deadline, which it did. (ECF Nos. 55-56.)

On February 19, 2021, the parties submitted a joint statement regarding their failure to file a motion for preliminary approval. (ECF No. 59.) The Court issued an order stating it understood "the parties agreed to the material terms of a settlement on September 18, 2020 and that '[a]fter the settlement was entered into', plaintiffs' counsel notified defendants on January 6, 2021 of a concern regarding the conditions of the jail." (ECF No. 60.) The Court essentially ordered Plaintiffs to take their dispute up through the enforcement process set out in the Settlement Agreement. (ECF No. 60.) If the parties were unable to resolve their issues, they were to file a report with the Court by April 23, 2021. (*Id.*) The Court also reminded counsel of their obligations under Rule 11. (*Id.*)

On March 28, 2021, Plaintiffs' counsel filed an administrative motion requesting the Court order the parties back to Judge Beeler to renegotiate the settlement or, in the alternative, that the Court issue a scheduling order setting the case for trial (ECF No. 61), which the Court denied stating: "It appears wholly inappropriate to require this Court to micro-manage the scheduling of a meet and confer. By the close of business on Monday April 5, 2021, the parties shall advise the Court by email when they have scheduled a meet and confer." (ECF No. 63.) The Court updated its order to require that "[s]hould the parties be unable to resolve these issues satisfactorily by April 16, 2021, the parties shall file by April 23, 2021 a report identifying any remaining violations and defendants' responses thereto. Following receipt of the report, the Court will consider whether either a referral to Judge Beeler or a case schedule is warranted." (ECF No. 65.)

On April 23, 2021, the parties summitted a joint response. (ECF No. 66.)  Plaintiffs stated they believed "the settlement agreement was a sham," that defendants were not providing inmates with seven consecutive hours of "lights out" time, and that the safety checks still cause excess noise. (ECF No. 66.) Defendants responded that Plaintiffs' characterization was inconsistent with the facts and disrespectful to the extensive time the parties and Judge Beeler put into the settlement process. Specifically, Defendants explained inmates have, as stated in the settlement agreement, 7 hours of continuous lights out time, which occurs from 9:30 p.m. to 4:30 a.m. and that in County Jail 5 the lights are turned off again after breakfast from 5:00 a.m. to 7:00 a.m. Defendants requested an order that the parties "submit a joint motion for preliminary approval, consistent with the settlement agreement." (ECF No. 66 6:9-11.)

Plaintiffs made no further efforts to settle or prosecute this case for more than a year. On June 27, 2022, Judge Beeler contacted the parties to schedule a settlement conference. (ECF No. 67.) This motion follows the parties' subsequent meet and confer efforts.

## II.     LEGAL STANDARD AND ARGUMENT

### A.     The Court Should Enforce The Settlement Agreement Between the Parties

The Settlement is a complete agreement, containing all material terms agreed upon by the parties. It was entered into before a judge and by counsel with the authority to bind their clients. The Court should therefore enforce its terms and issue an order requiring Plaintiffs to file a motion for preliminary approval and require all parties and counsel to use their best efforts to obtain preliminary and final Court approval of the settlement.

 "It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). The parties in this case also contemplated the district court would retain jurisdiction "over all disputes between and among the parties arising out of this Settlement Agreement." (Settlement ¶¶ 58, 74.)

"A settlement agreement is treated as any other contract for purposes of interpretation." *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citing *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 704 (9th Cir. 1989). Accordingly, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Id.* (quotation omitted). Here, California law applies. "This is true even though the underlying cause of action is federal." *Id.* (citations omitted).

In California, an enforceable settlement agreement "must meet two requirements: first, it must be a complete agreement. This requires that the parties have reached agreement on all material terms. Second, the parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." *Marani v. Cramer*, No. 4:19-CV-05538-YGR, 2021 WL 254308, at *1 (N.D. Cal. Jan. 26, 2021). This standard applies equally to putative class actions as is does to non-class cases.  "[T]he requirement that the district court approve a class action settlement does not affect the binding nature of the parties' agreement." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citing *Collins v. Thompson*, 679 F.2d 168, 172 (9th Cir. 1982)). The parties to this case entered

into a valid and enforceable agreement because the Settlement was a complete agreement entered into by counsel with the authority to bind their clients.

The terms of the Settlement itself show it is a complete agreement. Judge Beeler incorporated the written terms of the Settlement onto the record. (Tr. at 3:11-12 [stating that the terms of the written settlement agreement "are incorporated by this reference into this recording."].) Through Paragraph 4 of the Settlement, the parties affirmed that: "The purpose of this Settlement Agreement is to settle the above-captioned case. . . . ***The Parties wish to effectuate a complete resolution*** and settlement of all claims, disputes, and controversies relating to Plaintiffs' allegations by settling this lawsuit." (Agreement ¶ 4 [emphasis added].) The Parties also "acknowledge[d] that the Settlement Agreement contains and constitutes the entire agreement between the Settlement Class and Defendants with respect to the issues in this litigation. The terms of the Settlement Agreement are contractual and not a mere recital." (Agreement ¶ 75).

All parties also authorized their counsel to settle the lawsuit on their behalf and bind them to the material terms. Before putting the agreement on the record, Judge Beeler asked counsel to confirm they had authority to bind their clients to the terms of the agreement. All parties represented they did.

> THE COURT: And as the client representative we also have Ms. Baumgartner here, is that right? And she has the settlement authority, subject to the ordinary contingencies of approval?
>
> MS. BAUMGARTNER: Correct. Margaret Baumgartner, as legal counsel for the San Francisco Sheriff's Office.
>
> THE COURT: Great. Okay. So the parties have reached a settlement. Ms. Huang, you have settlement authority for your clients, is that correct?
>
> MS. HUANG: Correct.

(Transcript at 2:12-22.) The fact that the parties put the settlement agreement on the record before a judge rather than signing the written agreement does not impact its validity. An oral settlement agreement recited in open court is binding and enforceable just as a written agreement under California law. Cal. Code Civ. P. § 664.6(a) ("If parties to pending litigation stipulate . . . orally before the court, for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement"); *Blix St. Record, Inc. v. Cassidy*, 191 Cal. App. 4th 39, 48 (2010) (enforcing settlement put on the record before the court and finding party was estopped from denying the

enforceability of the settlement); *Elyaoudayan v. Hoffman*, 104 Cal. App. 4th 1421, 1430 (2012) (rejecting contention that an oral agreement was unenforceable where the parties had not later reduced it to writing by signing a written settlement agreement).

Thus, the Settlement is valid and enforceable. Plaintiffs have repeatedly been asked to identify which portion of the Settlement Agreement they believe Defendants breached. They have not identified any. It appears Plaintiffs dispute is not about whether Defendants are complying with the terms of the Settlement, but with the terms of the Settlement itself. Plaintiffs should not be allowed to withhold their consent from any motion for preliminary approval to obtain leverage to renegotiate the valid and binding Settlement among the parties. The time to negotiate has passed. Plaintiffs have no right withhold their consent from a motion for preliminary approval on that basis.

**B.    In The Alternative, The Court Should Dismiss Plaintiffs' Complaint With Prejudice For Failure to Prosecute**

"It is a well-established rule that the duty to move a case is on the plaintiff and not on the defendant or the court." *Fid. Phila. Tr. Co. v. Pioche Mines Consol., Inc.*, 587 F.2d 27, 29 (9th Cir. 1978). Plaintiffs and their counsel needlessly delayed and multiplied the proceedings, wasting the time of the Court and the settlement judge. Even if the Court credited the possibility that Plaintiffs believed they were entitled to renegotiate the terms of the settlement after September 18, 2020, and that they had no obligation to jointly seek Court-approval of a class-wide settlement, that does not explain Plaintiffs' failure to prosecute this case in the intervening twenty-three months. If Plaintiffs genuinely believed the parties had not reached a settlement, there is no explanation for their failure to conduct discovery or bring this matter to the Court's attention for a further case management conference. After the parties submitted their status report to the Court on April 23, 2021, Plaintiffs did nothing to revive this action. It was the Court—not Plaintiffs—who in June 2022 reset this case on the Court's docket. (ECF No. 66.)  This is grounds to dismiss Plaintiffs' action with prejudice for failure to prosecute.

Rule 41(b) empowers the Court to dismiss Plaintiffs' claims against the City "[i]f the plaintiff fails to prosecute" their lawsuit or comply with a rule of court. Fed. R. Civ. Proc. 41(b). A court dismissing an action under Rule 41(b) considers five factors: (1) the public's interest in an expedient resolution of the case; (2) the court's need to manage its docket; (3) the risk of prejudice to the

defendant from permitting plaintiff's conduct; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). This standard applies to cases brought by a plaintiff in their individual capacity and in putative class actions. *See e.g., Baeza v. Baca*, 700 F. App'x 657 (9th Cir. 2017) (unpublished) (affirming dismissal of putative class action for failure to prosecute); *Dharia v. Marriott Hotel Servs., Inc.*, No. CV 18-00008 HG-WRP, 2020 WL 1861656 (D. Haw. Apr. 13, 2020) (dismissing putative class action for failure to prosecute); *Dionisio v. Midland Credit Mgmt.*, No. 119CV0190DADJLT, 2019 WL 3410396, at *1 (E.D. Cal. July 29, 2019) (same); *Zhiqiang Cao v. U.S. Bancorp, N.A.*, No. 5:10-03027 EJD PSG, 2011 WL 3794949, at *1 (N.D. Cal. Aug. 26, 2011) (same).

Courts generally grant dismissals where "at least four factors support dismissal, or where at least three factors 'strongly' support dismissal." *Menbreno v. Stringer*, 785 F. App'x 361, 363 (9th Cir. 2019) (unpublished). Here, each of the five factors weighs in favor of dismissal and four do so strongly.

### 1.     The Public's Interest in Expedient Resolution of the Case Strongly Favors Dismissal

"[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Moore v. Addus HealthCare, Inc.*, No. 19-CV-01519-HSG, 2020 WL 127667, at *3 (N.D. Cal. Jan. 10, 2020); *see also Li Dong Ma v. RSM McGladrey, Inc.*, No. C 08-1729 JF (PVT), 2010 WL 11586815, at *3 (N.D. Cal. Aug. 9, 2010) (recognizing this rule holds even in complex cases). In *Pagtalunan*, 291 F.3d at 642, the Ninth Circuit held this factor weighed in favor of dismissal with a four-month delay. Other courts in this district have dismissed cases with similar delays. *See e.g., Davis v. City & Cnty. of San Francisco*, No. C-05-1341 MMC, 2006 WL 140568, at *1 (N.D. Cal. Jan. 17, 2006) (dismissal with an eight-month delay). This factor strongly weighs in favor of dismissal given Plaintiffs nearly two-year absence.

### 2.     The Court's Need to Manage Its Own Docket Strongly Favors Dismissal

"The pressing caseload in most district courts requires the cooperation of litigants in moving forward so that judicial resources are available to others." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984). The trial judge "is in the best position to determine whether the delay in a particular case

interferes with docket management." *Moore*, 2020 WL 127667, at *3. Like the public interest in expeditious resolution of litigation, courts have found this factor favors dismissal with delays shorter than Plaintiffs' delay here. *See e.g.*, *Zhiqiang Cao*, 2011 WL 3794949, at *2 (six-month delay); *Ash*, 739 F.2d at 496 (four-week delay).

Plaintiffs' delay unquestionably interfered with the Court's ability manage its own docket. Plaintiffs forced the Court to surveil and monitor this litigation in their absence. It was the Court who ultimately re-set this matter for a settlement conference after more than a year without any new filings. Additionally, Judge Beeler contributed considerable time and effort into this matter even after the parties reached their Settlement in September 2020. This was the direct result of Plaintiffs' delay and recalcitrance to comply with their obligations under the terms of the Settlement. Courts have the authority to dismiss an action "based upon Plaintiff's failure to clarify whether the claims of the class were settled, failure to prosecute the claims of the class presented in the complaint, [or] refusal to communicate with the Court." *Dionisio*, 2019 WL 3410396, at *3. Plaintiffs in this case have done just that. Therefore, this factor weighs strongly in favor of dismissal.

### 3. The Risk of Prejudice to the Defendant From Permitting Plaintiffs' Conduct Strongly Favors Dismissal

An unreasonable delay "creates a presumption of injury to the defendant." *Fid. Philadelphia Tr. Co.***Error! Bookmark not defined.**, 587 F.2d at 29. Defendants are entitled to such presumption because Plaintiffs' delay was unreasonable. Either Plaintiffs believed the parties reached a settlement or they did not. Under either understanding, they should have kept the litigation moving, by filing a motion for preliminary approval of the settlement or by continuing to litigate. They did neither. In addition to the presumed prejudice from an unreasonable delay, delay also prejudices defendants because it "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan*, 291 F.3d at 643. "Whether prejudice is sufficient to support an order of dismissal is judged, in part, on plaintiff's excuse for failing to comply with the Court's orders or failing to timely prosecute the case." *Dharia*, 2020 WL 1861656, at *7. Plaintiffs have no excuse. Therefore, this factor strongly favors dismissal.

### 4.    The Availability of Less Drastic Alternatives Favors Dismissal

It is "unnecessary for the . . . court to discuss why alternatives to dismissal were unfeasible" in a case like this with delays on the order of years not months. *In re Batson*, 993 F.2d 881 (9th Cir. 1993). Plaintiffs' conduct thus far "indicates that [they] either have no desire to move forward with this action or do not have much respect for deadlines imposed by this court." *Zhiqiang Cao*, 2011 WL 3794949, at *3. Under either interpretation, this factor favors dismissal.

### 5.    Public Policy Favoring Disposition of Cases on Their Merits Strongly Favors Dismissal

Although public policy favoring the disposition of a case on its merits typically weighs against dismissal for failure to prosecute, "[a]t the same time, a case that is stalled or unreasonably delayed by a party's failure to comply with deadlines and discovery obligations cannot move forward toward resolution on the merits." *In re Midland Credit Mgmt., Inc., Telephonic Consumer Prot. Act Litig.*, No. 11-MD-2286-MMA-MDD, 2019 WL 468846, at *3 (S.D. Cal. Feb. 6, 2019), *report and recommendation adopted sub nom.*, No. 11MD2286-MMA (MDD), 2019 WL 762613 (S.D. Cal. Feb. 21, 2019), *order vacated in part on reconsideration,* No. 11MD2286-MMA (MDD), 2019 WL 951182 (S.D. Cal. Feb. 27, 2019). Under such circumstances, the public policy of disposing of cases on their merits will nevertheless "weigh in favor of dismissal if the Plaintiff's conduct impedes progress in the case." *Id*. In this case, as in *Midland*, Plaintiffs conduct impeded resolution of this litigation. Plaintiffs' delays placed their action on the Civil Justice Reform Act's list of cases pending for greater than three years. Therefore, this final factor strongly weighs in favor of dismissal.

## III.    CONCLUSION

Finality is "one of the primary benefits of settlement." *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221-EMC, 2011 WL 1334444, at *11 (N.D. Cal. Apr. 7, 2011). Plaintiffs robbed both the Court and Defendants of that benefit by refusing to abide by the material terms of the Settlement their attorney represented she was authorized execute on their behalf. For the foregoing reasons, Defendants respectfully request the Court issue an order enforcing the Settlement entered on September 18, 2020, and require Plaintiffs to jointly move for an order from this Court preliminarily approving the settlement, and requiring all counsel to use their best efforts to have the Court enforce the settlement

agreement. In the alternative, Defendants request the Court dismiss the action against them in its entirety with prejudice for failure to prosecute. "[I]t is Plaintiff's responsibility to move this action toward a disposition at a reasonable pace, while avoiding dilatory and evasive tactics." *Hunter v. Sandoval*, No. 217CV09257CJCSHK, 2018 WL 6570870, at *2 (C.D. Cal. Dec. 12, 2018). Regardless of the reason, the facts show Plaintiffs failed that responsibility here.

Dated:  August 1, 2022

                                        DAVID CHIU
                                        City Attorney
                                        MEREDITH B. OSBORN
                                        Chief Trial Deputy
                                        RENEÉ E. ROSENBLIT
                                        KAITLYN MURPHY
                                        Deputy City Attorneys

                                   By: _____*/s/ Kaitlyn Murphy*_____
                                        KAITLYN MURPHY

                                        Attorneys for Defendants
                                        CITY AND COUNTY OF SAN FRANCISCO
                                        VICKI HENNESSY, PAUL MIYAMOTO,
                                        JASON JACKSON, AND KEVIN MCCONNELL